# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN (DUBUQUE) DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JUANA BRITO-RAYMUNDO, *a/k/a*
JUANA CEDILLO LOPEZ,

    Defendant.

No. 18-cr-1040-CJW

**ORDER**

_____

On October 18, 2018, the above-named defendant appeared before the Court and, pursuant to Federal Rule of Criminal Procedure 11, pleaded guilty to Count Two (2) of the Indictment. After cautioning and examining defendant under oath concerning each of the subjects mentioned in Rule 11, the Court determined that defendant's decision to plead guilty was knowledgeable and voluntary, and each offense charged was supported by an independent basis in fact containing each of the essential elements of the offense. The Court therefore **ACCEPTS** defendant's guilty plea and defendant is adjudged **GUILTY** of the offense to which defendant pled guilty.

At the commencement of the Rule 11 proceeding, the Court placed defendant under oath and explained that if defendant answered any question falsely, the government could prosecute defendant for perjury or for making a false statement. The Court also advised defendant that in any such prosecution, the government could use against defendant any statements made under oath.

Once defendant was placed under oath, the Court asked defendant a number of questions to ensure defendant had the requisite mental capacity to enter a plea. The Court

elicited defendant's full name, age, and extent of education.  The Court also inquired into defendant's history of mental illness and use of illegal and/or prescription drugs and alcohol.  From this inquiry, the Court determined defendant was not suffering from any mental disability that would impair defendant's ability to make a knowing, intelligent, and voluntary guilty plea.

Defendant acknowledged receipt of a copy of the Indictment and further acknowledged that defendant had fully discussed the Indictment with defendant's counsel. Defendant acknowledged that defendant had fully conferred with defendant's counsel prior to deciding to plead guilty and that defendant was satisfied with counsel's services.

The Court advised defendant of all of the rights defendant would be giving up if defendant decided to plead guilty, including:

1. The right to assistance of counsel at every stage of the case;

2. The right to a speedy, public trial;

3. The right to have the case tried by a jury selected from a cross-section of the community;

4. That defendant would be presumed innocent, and would be found not guilty, unless the government could prove each and every element of the offense beyond a reasonable doubt;

5. That defendant would have the right to see and hear all of the government's witnesses, and defendant's attorney would have the opportunity to cross-examine any witnesses called by the government;

6. That defendant would have the right to subpoena witnesses to testify at the trial and that if defendant could not afford to pay the costs of bringing these witnesses to court, then the government would pay those costs;

7. That defendant would have the privilege against self-incrimination; i.e., defendant could choose to testify at trial, but need not do so; if defendant chose not to testify, then the Court would instruct the jury that the jury

could not draw any adverse inferences from defendant's decision not to testify;

8. That any verdict by the jury would have to be unanimous;

9. That defendant would have the right to appeal, and if defendant could not afford an attorney for the appeal, then the government would pay the costs of an attorney to prepare the appeal.

The Court explained that if defendant pleaded guilty, defendant would be giving up all of these rights, there would be no trial, and defendant would be adjudged guilty, just as if defendant had gone to trial and a jury returned a guilty verdict against defendant.

The Court determined that defendant was pleading guilty pursuant to a plea agreement with the government. After confirming that a copy of the written plea agreement was in front of defendant and defendant's counsel, the Court determined that defendant understood the terms of the plea agreement. The Court summarized the plea agreement, and made certain defendant understood its terms. The Court explained that after the Court accepted defendant's guilty plea, defendant would have no right to withdraw the plea at a later date, even if the sentence imposed was different from what defendant anticipated.

The Court specified that the Court was not making any decision as to whether it would ultimately accept the plea agreement. The Court further advised defendant that the Court may not reach a determination on whether to accept the plea agreement until defendant's sentencing. The Court advised defendant that if the Court ultimately decided to reject the plea agreement, defendant would have an opportunity to withdraw each guilty plea, until such time as defendant was sentenced. The Court explained to defendant that if the Court ultimately rejected the plea agreement and defendant did not withdraw each guilty plea, then the Court could dispose of the case less favorably toward defendant than the plea agreement contemplated.

The Court summarized the charge against defendant and listed the elements of the crime to which defendant was pleading guilty. The Court determined that defendant understood each and every element of the crime to which defendant was pleading guilty, and defendant's counsel confirmed that defendant understood each and every element of the crime to which defendant was pleading guilty. The Court elicited a full and complete factual basis for all elements of the crimes charged to which defendant was pleading guilty. Defendant's attorney indicated that each offense to which defendant was pleading guilty was factually supported.

The Court explained to defendant that the Court would determine the appropriate sentence at the sentencing hearing. The Court explained that the advisory United States Sentencing Guidelines would be used to calculate defendant's sentence, but that the sentence imposed might be different from what the advisory guidelines suggested it should be, and may be different from what defendant's attorney had estimated. The Court explained that a probation officer would prepare a written presentence investigation report and that defendant and defendant's counsel would have an opportunity to read the presentence report before the sentencing hearing, and would have the opportunity to object to the contents of the report. The Court further explained that defendant and defendant's counsel would be afforded the opportunity to present evidence and be heard at the sentencing hearing.

The Court advised defendant of the consequences of pleading guilty, including the maximum fine, the maximum term of imprisonment, term of supervised release, and the possibility that restitution may be ordered. Specifically, the Court advised defendant that **Count Two (2)** of the Indictment is punishable by up to **five (5) years** in prison; a period of supervised release following prison of up to **three (3) years** on supervised release; and a fine of up to **$250,000**. The Court advised defendant that regardless of the sentence imposed, there would be no possibility of parole. The Court also advised defendant that

the Court will impose a mandatory special assessment of **$100.00**, which defendant must pay.

The Court also advised defendant of the collateral consequences of pleading guilty. Because a charge to which defendant pled guilty involves fraud or other intentionally deceptive practices, defendant was advised that the Court could order defendant to provide notice of each fraud conviction to victims of the offense. Defendant acknowledged understanding all of the above consequences.

The Court explained that if a term of supervised release is included in defendant's sentence, conditions of supervised release will be imposed. The Court further advised defendant that if defendant violates a condition of supervised release, the Court could revoke defendant's supervised release and require defendant to serve all or part of the term of supervised release in prison, without credit for time previously served on supervised release. The Court advised defendant that there is no parole in the federal system.

The Court also explained that pursuant to the plea agreement, defendant waived any right to appeal the sentence imposed, except for under the limited circumstances set forth in the plea agreement.

Defendant confirmed that the decision to plead guilty was voluntary and was not the result of any promises other than plea agreement promises, and the decision to plead guilty was not the result of anyone threatening, forcing, or pressuring defendant to plead guilty.

The Court advised defendant that because defendant is not a United States citizen, it is likely defendant will be deported from the United States after serving any prison sentence imposed. The Court also advised defendant that being adjudged guilty may affect defendant's ability to ever lawfully reenter the United States.

Defendant confirmed that defendant still wished to plead guilty, and defendant pled guilty to Count Two (2) of the Indictment.

The Court makes the following findings with respect to each guilty plea:

1. Each plea is voluntary, knowing, not the result of force, threats or promises, except plea agreement promises, and defendant is fully competent.

2. Defendant is aware of the minimum and maximum punishment.

3. Defendant knows of and voluntarily waived defendant's jury trial rights.

4. There is a factual basis for each plea.

5. Defendant is guilty of each crime to which defendant pled guilty.

The Court advised defendant that defendant agreed to forfeit and abandon any and all claim to the property identified in the plea agreement.

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 18th day of October, 2018.

_____
C.J. Williams
United States District Judge
Northern District of Iowa